**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **ANDREW HOWELL,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 06 C 50052 |
| ) | |
| **WILLIAM JOFFE**, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before me are several motions that require resolution. First, defendants St. Mary's Catholic Church and Saint Mary's School (collectively "St. Mary's"),[1] Monsignor James McLoughlin ("McLoughlin"), the Catholic Diocese of Rockford (the "Diocese"), and Monsignor David Kagan ("Kagan") have moved for a protective order pursuant to Federal Rule of Civil Procedure 26(c).[2] These same defendants have also filed a motion pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(c) and 9(b) to dismiss Counts V, VII, VIII and X of Howell's complaint. Finally, defendants Hinshaw & Culbertson, LLP ("Hinshaw") and Ellen Lynch ("Lynch") have brought their own motion to dismiss Counts VII, VIII and IX of

---

[1]Defendants contend that these entities are incorrectly named in the pleadings and that they are collectively correctly identified as St. Mary's Church of Woodstock, a religious corporation.

[2]Under Federal Rule of Civil Procedure 26(c), this court has the authority to "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." This includes the authority to order that certain disclosures not be had. FED. R. CIV. P. 26(c)(1).

Howell's complaint under Federal Rule of Civil Procedure 12(b)(6).

For the following reasons, I conclude that, while a portion of the voicemail recording is not protected by attorney-client privilege, the portion at issue in this litigation is. Based on that finding of privilege I dismiss Count VII of Howell's complaint. Considering defendants' motions to dismiss, and setting aside Count VII, which is dismissed due to my finding of privilege, I grant their motions to dismiss Counts V, VIII, IX and X.

## I. Facts Relevant to All Motions

The following facts are relevant to all three motions now before me: Howell's complaint alleges that between 1976 and 1979, when he was a child, defendant William Joffe ("Joffe") (who has not yet had an appearance filed on his behalf or otherwise participated in the case) sexually abused him. At that time, Joffe was a priest associated with St. Mary's. Howell also alleges that Lynch, an agent or employee of Hinshaw, contacted him in April of 2004 along with Kagan. Howell contends that Kagan and Lynch left him a voicemail message with "rude, derogatory, inflammatory, and inappropriate comments" about Howell and about "other victims who had experienced sexual assault and abuse" by Joffe. Howell alleges that as a result of this voicemail he suffered severe emotional distress. He has brought numerous claims, including claims for negligent and intentional infliction of emotion distress caused by the voicemail message.

After Lynch and her firm, co-defendant Hinshaw, filed a motion to dismiss, among others, these infliction of emotional distress claims, this court questioned the parties about the actual content of the voicemail recording. Howell responded by providing this court, *in camera*, an audio recording and transcript prepared by a professional court reporter purporting to document the voicemail message at issue; it is these materials for which defendants seek a protective order. In their motion defendants appear to concede that the audio recording does contain a message left by Lynch and Kagan for Howell, although defendants generally dispute the accuracy of plaintiff's transcription of the recording.[3]

Based on this court's review of the recording, the audio recording appears to contain three separate messages for Howell. The first message is from a caller identifying himself as Monsignor Jim McLaughlin. Defendants' motion does not assert any privilege over this specific message. The second message is a message to Howell from a caller identifying herself as Lynch. In the message, Lynch identifies herself as associated with the Diocese and requests to speak with Howell. Defendants' motion also does not assert any privilege over this specific message.

The third message, however, begins as a message to Howell from a caller identifying herself as Lynch; defendants acknowledge in

---

[3]Defendants do not take issue with any particular portion of the transcription but generally contend that certain portions of the recording are inaudible.

their motion that this is Lynch speaking. Lynch states that she is "getting back" to Howell and asks him to call her. At this point, a "clicking" sound is heard on the recording. Lynch then converses with an unidentified male voice; defendants' motion asserts that this voice is Kagan's. Lynch and Kagan comment about the characteristics of Howell's voicemail recording and Kagan expresses an opinion about Howell's vocal characteristics. The two then discuss how Howell compares to other people who have made allegations of abuse against the Diocese. Finally, Kagan expresses an opinion about the type of victims that Joffe allegedly targeted. The conversation then turns to other topics that appear to relate to other claims or other litigation against the Diocese, and Lynch asks some questions and further converses with Kagan about those unrelated issues. The recording then ends.

In support of their motion for a protective order, defendants have submitted an affidavit from Kagan and an affidavit from Lynch. In Kagan's affidavit he avers that in 2004 he was an ordained priest in the Diocese. As part of his duties he analyzed complaints or allegations of misconduct against individuals associated with the Diocese, and met with the Diocese's legal counsel (at that time Lynch) to discuss legal claims against the Diocese. In evaluating sexual misconduct claims, Kagan avers that he would "consider the similarities, if any, between the claims made by various claimants concerning the same person" and would

"ask Diocesan Counsel for input and impressions concerning similarities, if any." According to his affidavit, on April 27, 2004, he heard Lynch leave a message for Howell, and after he believed that Lynch had hung up the telephone receiver, he "voiced his impressions about [Howell's] vocal characteristics and other aspects of the message, including the music in the background of the message." Then, Kagan avers Lynch "provided her impressions about the similarities, if any, in the claims for sexual misconduct alleged to have been committed by the same person against minors who were now reporting such conduct as adults." Kagan's affidavit states that Kagan and Lynch then discussed other pending and potential claims against the Diocese.

In Lynch's affidavit, she states that in 2004 she worked as an attorney with Hinshaw, and one of her clients was the Diocese. As counsel for the Diocese she regularly consulted with Kagan regarding potential and pending civil claims. On April 27, 2004, she avers that she had a meeting with Kagan to discuss claims; Kagan requested the meeting to "provide a status and strategy report." Kagan avers that after she left a telephone message for Howell she intended to end the call, but the telephone connection did not disconnect because she had unknowingly placed the receiver on the phone incorrectly. At that time, she conversed with Kagan "in evaluation of [Howell's] allegations including responding to [Kagan's] comments and impressions about the type of boy the

accused priest might have targeted based on the similarities between [Howell] and other victims of the accused priest" as well as about other claims of sexual misconduct and the status of discovery in other pending lawsuits against the Diocese. Kagan's affidavit further states that she was unaware that the line was still connected during the call until August 9, 2004, when Howell's counsel contacted her and told her that he had an audio tape of the conversation. She says that the same day she contacted Howell's counsel, told him that the conversation was protected by attorney-client privilege, and demanded the return of any copies of the conversation.

## II.  Motion for a Protective Order

I first address defendants' motion for a protective order. Defendants' motion seeks a declaration that the conversation between Lynch and Kagan, as captured by the audio recording and transcript described above, is protected by the attorney-client privilege, and an order that these materials be returned to the defendants and that Howell be prohibited from referring to or relying upon such materials. For the following reasons, I conclude that a portion of the conversation is protected by attorney-client privilege. Based on this finding I dismiss Count VII of the complaint.

A.  Standard for Applying the Attorney-Client Privilege

Where, as here, a district court exercises diversity jurisdiction over a state law claim, the court should apply the law of privilege that would be applied by the courts of the state in which it sits.  *See Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1097 (7th Cir. 1987) (citing Fed. R. Evid. 501).  Illinois law defines attorney-client privilege as follows:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client,[4] (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*People v. Simms*, 192 Ill. 2d 348, 381, 249 Ill. Dec. 654, 679, 736 N.E.2d 1092, 1117 (2000) (internal citations omitted).  Under this test the party asserting the privilege has the burden to show, at minimum, that "the communication originated in a confidence that it would not be disclosed, was made to an attorney in his legal capacity for the purpose of securing legal advice or services, and remained confidential." *Consolidation Coal Co. v. Bucyrus-Erie Co.*, 89 Ill. 2d 103, 119, 59 Ill. Dec. 666, 673, 432 N.E.2d 250, 257 (1982).

---

[4]Although the test is generally phrased as protecting statements made by the client, the privilege applies equally to statements made by the client's attorney to the client where the other required factors are present. *See, e.g.*, *Newton v. Meissner*, 76 Ill. App. 3d 479, 498, 31 Ill. Dec. 864, 878, 394 N.E.2d 1241, 1255 (Ill. App. Ct. 1979).

The parties appear to agree that Lynch was Kagan's attorney and that Lynch conversed with Kagan in her legal capacity, so this issue is not in dispute. However, I must consider whether defendants have shown the other required factors.

I note, as indicated above, that the first two messages left for Howell and reflected on the audio recording are not covered by the attorney-client privilege, and defendants do not assert that they are. These two messages, one by the individual identifying himself as Jim McLaughlin, and the other by an individual identifying herself as Lynch, were communications made directly by those individuals to Howell. The beginning part of the third message that Lynch appears to have intentionally left for Howell when she asked him to call her is also not covered by the attorney-client privilege, and defendants do not assert that it is. Therefore, I only need analyze the latter part of the third message, the conversation that occurs after a "clicking" sound is heard on the recording.

B. Purpose of Securing Legal Advice or Services

The first requirement for the assertion of the attorney-client privilege is that the statement be made for the purpose of securing legal advice or services. *Consolidation Coal Co.*, 89 Ill. 2d at 119, 59 Ill. Dec. at 673, 432 N.E.2d at 257. At least one Illinois court has recognized the general federal rule that business advice does not qualify as "legal advice" and therefore is not protected

by privilege. *See, e.g.*, *CNR Invs., Inc. v. Jefferson Trust and Sav. Bank*, 115 Ill. App. 3d 1071, 1076, 71 Ill. Dec. 612, 615, 451 N.E.2d 580, 583 (Ill. App. Ct. 1983) (citing *Barr Marine Prods. Co., Inc. v. Borg Warner Corp.*, 84 F.R.D. 631 (E.D. Pa. 1979)); *see also In re Walsh*, 623 F.2d 489, 494 (7th Cir. 1980) ("Business or other advice is not privileged, and should be distinguished from professional legal services."). I agree that the latter part of the conversation, when Lynch and Kagan discuss contacting other claimants and address discovery matters in other litigation, was for the purpose of securing legal advice and services. Howell does not appear to contend otherwise. In addition, for the reasons discussed below I agree that the first part of Kagan and Lynch's conversation, in which they comment about Howell's vocal characteristics and compare him to other purported claimants, was for the purpose of securing legal advice.

Here, defendants contend that Kagan and Lynch's conversation was for the purpose of securing legal advice or services because, by discussing their impressions of Howell's "vocal characteristics" and voicemail recording, and by comparing those characteristics with the characteristics of other claimants, they were analyzing sexual misconduct claims. Kagan avers in his affidavit that he evaluates sexual misconduct claims involving the Diocese by considering the similarities between the claims. From my evaluation of the conversation it seems that most of the comments

made by Kagan and Lynch during the conversation are an analysis of characteristics of purported claimants, including Howell, and imply an analysis of which claims likely had merit. Given that Kagan avers that he initiated a conversation with Lynch in order to receive legal advice about the claims, these comments are protected by the attorney-client privilege.

It is true that some of the comments made by Kagan at the beginning of the conversation are not obviously related to the goal of evaluating claims or seeking legal advice from Lynch. This is particularly true of Kagan's initial comments about Howell's vocal characteristics. As Howell argues, Illinois courts recognize a broad discovery policy "looking to the ultimate ascertainment of the truth" and limit the attorney-client privilege "to the extent reasonably necessary to achieve its purpose" in order to insulate too much material from the truth-seeking process. *Consolidation Coal Co.*, 89 Ill. 2d at 118, 59 Ill. Dec. at 673, 432 N.E.2d at 257; *see also Archer Daniels Midland Co. v. Koppers Co., Inc.*, 138 Ill. App. 3d 276, 278-79, 98 Ill. Dec. 91, 93, 485 N.E.2d 1301, 1303 (Ill. App. Ct. 1985) ("The courts, therefore, narrowly construe the attorney-client privilege in order to avoid trammeling upon the broad discovery policy."). This raises the issue whether I should consider a portion of Kagan and Lynch's conversation not to be protected by the attorney-client privilege. An analogy can be drawn to the work product privilege. The Seventh Circuit held

in *Loctite Corp. v. Fel-Pro, Inc.*, 667 F.2d 577 (7th Cir. 1981) that a court can determine whether a document is protected as work product by examining whether it is "primarily concerned with legal assistance." *Id.* at 582. The "primary purpose" of Kagan and Lynch's conversation was to share information protected by the attorney-client privilege. Therefore, even though there appear to be some extraneous comments in the conversation, I cannot conclude that they are somehow unprotected. See also *In re Cont'l Illinois Sec. Litig.*, 732 F.2d 1302, 1314 (7th Cir. 1984) ("We may further assume that, because the Report, in large part, consists of communication between the [client] and its counsel, it was protected against disclosure at the time of preparation by the attorney-client privilege.").

Of course, whether privilege exists here is governed by Illinois, not federal law, so I must determine whether Illinois law also would not require partial disclosure. It is true that the general purpose of the privilege under Illinois law is to encourage attorney-client communications, so that parsing different elements of the conversation might undermine a client's ability to speak with his attorney without carefully considering each sentence or word that he speaks to the attorney. But Illinois courts have also recognized that documents must be redacted and that parts of a particular document over which the attorney privilege could not reasonably apply must be disclosed. *See, e.g., Illinois Educ.*

*Ass'n v. Illinois State Bd. Of Educ.*, 204 Ill. 2d 456, 439, 274 Ill. Dec. 430, 439, 791 N.E.2d 522, 531 (2003) (internal citations omitted). It is possible that this same logic for redaction might apply here. However, I can find no Illinois cases holding that part of a conversation as short as this one is privileged, while part is not, or any case that would allow or require the kind of parsing that would be required to find only part of this conversation protected by privilege. In addition, parsing out one set of brief exchanges from an already-brief conversation makes little sense because it would deter clients from seeking the advice of their attorneys. I also find persuasive defendants' explanation that these statements were part of their overall analysis of putative claimants. Therefore, I conclude that this entire conversation was for the purpose of seeking legal advice or services.

   C. Originated in a Confidence that it would not be Disclosed

   Because I conclude that Kagan and Lynch's conversation was for the purpose of seeking legal advice or services, I must consider whether the conversation meets the other requirements necessary to assert attorney-client privilege. This includes determining whether the conversation originated in a confidence that it would not be disclosed. *Consolidation Coal Co.,* 89 Ill. 2d at 119, 59 Ill. Dec. at 673, 432 N.E.2d at 257. Both Kagan and Lynch have averred that they believed that after Lynch left her original

message to Howell and then placed the receiver back on the telephone, the telephone call had terminated. In short, they both believed that they were speaking to one another in confidence and that Howell could not hear what they were saying. Given the content of their conversation it seems plausible that this is the case. Howell argues in his response that, as alleged in his complaint, the defendants intended Howell to hear their conversation in order to cause him emotional distress. However, this is merely an allegation and Howell has presented no evidence to support it. At this stage in the litigation, defendants have met their burden to demonstrate that Kagan intended the conversation to be in confidence.[5]

## D. Remained Confidential

I must also consider whether the conversation in fact remained confidential. *Consolidation Coal Co.,* 89 Ill. 2d at 119, 59 Ill. Dec. at 673, 432 N.E.2d at 257. Clearly in this case Howell obtained an audio recording of the conversation through the recording left on his voicemail, but I must consider whether this breach of confidentiality resulted in a waiver of the privilege. As discussed above, although a communication may be protected by attorney-client privilege, that privilege can be waived. *See, e.g.*, *People v. Simms*, 192 Ill. 2d at 381, 249 Ill. Dec. at 679,

---

[5]Should Howell later be able to present evidence to challenge that conclusion, I might reconsider this ruling.

736 N.E.2d at 1117. One way that the privilege can be waived is through disclosure. *See, e.g.*, *Newton*, 76 Ill. App. 3d at 498-99, 31 Ill. Dec. at 878, 394 N.E.2d at 1255. Here, given that I find that defendants have shown that any disclosure was inadvertent and unintentional, I must determine whether an inadvertent disclosure can constitute waiver. Although defendants assert that it cannot, Illinois courts are split on this issue, and I can find no authority from the Illinois Supreme Court resolving this question. The Illinois appellate court opinion that defendants cite, *People v. Murry*, 305 Ill. App. 3d 311, 316, 238 Ill. Dec. 569, 574, 711 N.E.2d 1230, 1235 (Ill. App. Ct. 1999), adopted the "subjective analysis test" for waiver under which "inadvertent disclosure can never result in a waiver of the privilege because the client had no intention of waiving the privilege."[6] The court in *Murry*, however, acknowledged and rejected an earlier decision by an Illinois appellate court adopting the "balancing test" for determining whether privilege has been waived. *See id.* (citing *Dalen v. Ozite Corp.*, 230 Ill. App. 3d 18, 28, 171 Ill. Dec. 845, 851, 594 N.E.2d 1365, 1371 (Ill. App. Ct. 1992)). Under the balancing test as articulated by the court in *Dalen*, a court should determine whether

---

[6]Defendants also cite *Mendenhall v. Barber-Greene Co.*, 531 F. Supp. 948 (N.D. Ill. 1981) for the proposition that Illinois has adopted the "subjective analysis test." While this case did hold that an attorney that prepares an affidavit to the Patent and Trademark Office on the client's behalf has not waived attorney-client privilege, *Id.* at 950, it is a patent case, does not address Illinois law, and does not discuss the subjective analysis test.

an inadvertent disclosure waived the privilege by analyzing (1) the reasonableness of precautions taken to prevent the disclosure; (2) the time taken to rectify the error; (3) the scope of the discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness. *Dalen*, 230 Ill. App. 3d at 1371, 171 Ill. Dec. at 851, 594 N.E.2d at 1371 (internal citations omitted). Because the Illinois Supreme Court has not spoken on which test to apply, I must apply the law that I believe the Illinois courts would under the circumstances. *See Kutsugeras v. AVCO Corp.*, 973 F.2d 1341, 1346 (7th Cir. 1992). Here, I believe that Illinois courts would apply the balancing test as set forth in *Dalen* since, as the court in *Dalen* explains, to do otherwise would be to make decisions "based on mere mechanical application rather than a judicial reason and fairness."[7] *Dalen*, 230 Ill. App. 3d at 1371, 171 Ill. Dec. at 851, 594 N.E.2d at 1371.

Under the balancing test, however, I conclude that the defendants have not waived the privilege. Based on Kagan and Lynch's affidavits, which Howell has not contradicted with any evidence, Kagan and Lynch believed that Lynch had replaced the receiver on the telephone when they began their conversation; although this was an error there is no reason to believe that this

---

[7]In addition, I note that the federal courts appear to have adopted a version of the balancing test that examines the efforts taken to correct the disclosure. *See* 6 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 26.49(5)(e) (3d ed. 1997) (collecting cases).

was not an innocent (and not uncommon) mistake.  Further, according

to Lynch's affidavit, which Howell does not contradict, the same

day that Lynch discovered that Howell had an audio recording of the

conversation at issue she asserted privilege over it and asked that

Howell's counsel return any copies.  The fact that defendants did

not seek a protective order until now is immaterial since

defendants were clearly seeking to resolve this dispute.  I find

that the scope of the discovery and the extent of the disclosure as

well as the overriding issue of fairness all support a finding of

privilege.  Therefore, I conclude that defendants have not waived

their right to assert privilege over the privileged portion of the

recording.[8]

---

[8]Howell also argues that the crime-fraud exception to the attorney-client privilege applies because the conversation forms part of the basis of Count X of his complaint alleging fraud. Count X alleges that defendants Kagan and McLoughlin contacted Howell and stated that they desired to offer him assistance, and offered him "sacramental reconciliation" in order to induce him to forego legal action.  Howell has not explained how the conversation at issue forms part of this Count, or how it represents or furthered a fraud on Howell.   The Illinois Supreme Court has defined the crime-fraud exception as follows:

> [I]n order to invoke the exception to the
> privilege, the proponent of the evidence must
> show that the client, when consulting the
> attorney, knew or should have known that the
> intended conduct was unlawful.  Good-faith
> consultations with attorneys by clients who
> are uncertain about the legal implications of
> a proposed course of action are entitled to
> the protection of the privilege, even if that
> action should later be held improper.

See In re Marriage of Decker, 153 Ill. 2d 298, 314, 180 Ill. Dec.

## E.  Conclusion

For the above reasons, I conclude that the portion of the recording at issue memorializing a conversation between Kagan and Lynch is protected by the attorney-client privilege.  Finding that the portion of the recording memorializing the conversation between Lynch and Kagan is privileged does not completely end the inquiry concerning Howell's claims about this recording.  Because I find that the conversation is privileged, I necessarily also conclude that Lynch and Kagan did not intend for Howell to hear their conversation.  This means that my finding of privilege bars Howell's intentional infliction of emotional distress claim.[9]  Should additional evidence surface during discovery I may reconsider this ruling.  However, the fact remains that even if Kagan and Lynch's conversation was privileged despite its accidental disclosure, Howell's complaint alleges that the negligent disclosure of this conversation caused him injury.  I can find no law that would bar Howell from recovering for the injuries caused by that negligence simply because the conversation that was accidentally disclosed was privileged.  I still must address

17, 25, 606 N.E.2d 1094, 1102 (1993) (internal citations omitted). Howell has not made the required showing, so I find the crime-fraud exception does not apply.

[9]Obviously, if evidence should surface during discovery that would indicate that the conversation was intentionally disclosed to Howell, both the ruling on attorney-client privilege and its effect on Howell's intentional infliction of emotional distress will be considered further.

defendants' motion to dismiss as to Howell's negligent infliction of emotional distress claim.

### III. Lynch and Hinshaw's Motion to Dismiss

In assessing defendants' motion to dismiss, I must accept all well-pled facts in Howell's complaint as true. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). I must view the allegations in the light most favorable to Howell. *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987). Dismissal of a claim is proper only if Howell can prove no set of facts to support that claim. *First Ins. Funding Corp. v. Fed. Ins. Co.*, 284 F.3d 799, 804 (7th Cir. 2002).

Howell's complaint did not attach a copy of the voicemail recording at issue, although he references it in his complaint. However, at the request of this court Howell did later provide an audio recording of the voicemail message at issue, and because the voicemail message is referenced in the complaint and is central to his claims I may consider this voicemail recording without converting Lynch and Hinshaw's motion to dismiss into a motion for summary judgment. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). Lynch and Hinshaw's motion to dismiss also contains additional explanation about this voicemail, along the lines of the arguments in defendants' motion for a protective order. That explanation goes beyond the facts contained in Howell's complaint, though, so I cannot consider it now. *See*

*Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d
1423, 1430 (7th Cir. 1996).

A. Negligent Infliction of Emotional Distress

Count VIII of Howell's complaint brings a claim against Lynch
and Kagan for negligent infliction of emotional distress based on
the same voicemail that forms the basis for Count VII. Unlike
intentional infliction of emotional distress, a claim for negligent
infliction of emotional distress requires a plaintiff to show that
(1) defendant owed plaintiff a duty; (2) defendant breached that
duty, and (3) plaintiff's injury was proximately caused by that
breach. *See Parks v. Kownacki*, 193 Ill. 2d 164, 181, 249 Ill. Dec.
897, 906-07, 737 N.E.2d 287, 296-97 (2000). Illinois courts, in
determining whether a defendant owed a duty to a plaintiff, examine
"various policy considerations, such as the likelihood of harm, the
gravity of the injury, the burden of guarding against the injury,
and the relationship between the parties." *Corgan v. Muehling*, 143
Ill. 2d 296, 306, 158 Ill. Dec. 489, 493, 574 N.E.2d 602, 606
(1991) (internal citation omitted). Under Illinois law, the
existence of a duty is a question of law to be determined by the
court. *See Gouge v. Cent. Illinois Pub. Serv. Co.*, 144 Ill. 2d
535, 542, 163 Ill. Dec. 842, 846, 582 N.E.2d 108, 112 (1991)
(internal citations omitted).

Lynch and Hinshaw contend that Howell has not stated a claim
for negligent infliction of emotional distress because he cannot

show that Lynch owed him a duty.  Howell has not alleged in his complaint that Lynch owed him any duty, but in his response to Lynch and Hinshaw's motion he contends that Lynch owed him a duty because of the great likelihood of harm, the extreme gravity of his injury, the low burden on Lynch of guarding against injury to Howell, and the reasonableness of imposing a duty on Lynch regardless of her relationship to the other defendants.  Defendants contend that Lynch, as an attorney for other defendants, could owe no duty to Howell because she acted in privity with her client.[10]

I agree with defendants that Howell has alleged no facts that would show that Lynch owed him a duty, and a review of Illinois law suggests that there is no basis to conclude that Lynch had such a duty.  Illinois courts have found a duty in circumstances in which the defendant had some specific relationship with the plaintiff, such as a doctor-patient relationship.  *See, e.g.*, *Corgan*, 143 Ill. 2d at 307, 158 Ill. Dec. at 493, 574 N.E.2d at 606 (collecting cases).  The Illinois Supreme Court has concluded that a diocese owes no duty to a possible childhood victim of priest sexual abuse when making an investigatory contact withe the potential victim.  *See Parks*, 193 Ill. 2d at 181-82, 249 Ill. Dec. at 907, 737 N.E.2d at 297 (finding that plaintiff failed to state a claim for

---

[10]Howell alleges in his complaint that Lynch was an agent and/or representative for the other defendants and that she was an agent and/or employee of Hinshaw, but he does not specifically allege that Lynch acted as an attorney for the other defendants (although he also does not dispute this).

negligent infliction of emotional distress where plaintiff alleged that diocese should have assessed the possibility that contacting her to discuss possible sexual abuse she endured as a child might cause her emotional distress). If the Diocese itself owed no duty to Howell, Lynch could have owed Howell no such duty. Therefore, I agree that even taking the allegations in the complaint as true, Howell cannot show that Lynch owed him a duty, so I grant Lynch's motion to dismiss Count VIII against here.

### B. Vicarious Liability

Finally, Lynch and Hinshaw have also moved to dismiss Count IX of Howell's complaint, a claim for vicarious liability against Hinshaw that alleges that Hinshaw is liable for Lynch's actions as its agent. Since, because of my finding of privilege, I am dismissing Howell's claim for intentional infliction of emotional distress against Lynch, and I am otherwise granting Lynch and Hinshaw's motion to dismiss Howell's negligent infliction of emotional distress claim, there is no longer any basis for Hinshaw's vicarious liability. I therefore grant Lynch and Hinshaw's motion to dismiss Count IX.

### IV.

Defendants St. Mary's, the Diocese, McLoughlin and Lynch have also filed a motion pursuant to Federal Rules of Civil Procedure 12(b)(6), 12© and 9(b) to dismiss Counts V, VII, VIII and X of Howell's complaint. Count V of Howell's complaint alleges that

Saint Mary's and the Diocese, through their agents McLoughlin and Lynch, held themselves out as spiritual, moral and ethical advisors and counselors to Howell, and entered into a fiduciary relationship with him. Howell alleges that they breached that fiduciary duty "by engaging in the conduct" described in the complaint. Count VII, as described above, alleges that Kagan intentionally inflicted emotional distress upon Howell through the April 2004 voicemail described *supra*. As discussed above, I dismiss this claim because of my finding of privilege. Count VIII alleges that Kagan negligently inflicted emotional distress upon Howell through that same voicemail. Count X alleges that McLoughlin and Kagan committed fraud by contacting Howell and urging him to engage in a "sacramental reconciliation." For the following reasons, I grant that motion and dismiss Counts V, VIII and X.

## A. Breach of Fiduciary Duty

Count V of Howell's complaint alleges that Saint Mary's and the Diocese, through their agents McLoughlin and Lynch, held themselves out as spiritual, moral and ethical advisors and counselors to Howell, and entered into a fiduciary relationship with him, but subsequently breached that relationship. Defendants argue that Illinois law does not recognize a fiduciary duty by clerics, and I agree. An Illinois court has previously held that "a contention that a cleric has breached his duty as a fiduciary [to a parishoner] is not actionable." *See Amato v. Greenquist*, 287

Ill. App. 3d 921, 932-33, 223 Ill. Dec. 261, 269, 679 N.E.2d 446, 454 (Ill. App. Ct. 1997). This is because inquiring about the nature of the fiduciary relationship between the cleric and the parishoner would require a court to delve into matters of spirituality since "[t]he fiduciary relationship is inescapably premised upon the cleric's status as an expert in theological and spiritual matters." *Id.* (internal citations omitted). The Seventh Circuit has similarly concluded that Illinois law would not recognize the existence of a fiduciary duty where such a claim would be a way around Illinois' bar on "clergy malpractice" claims. *See Dausch v. Rykse*, 52 F.3d 1425, 1428-29 (7th Cir. 1994) (per curiam).

Howell responds that a fiduciary relationship here could be actionable because an examination of Kagan and McLoughlin's fiduciary duties would not involve an assessment of the church's religious policies. In making this argument Howell relies on *Bivin v. Wright*, 275 Ill. App. 3d 899, 212 Ill. Dec. 287, 656 N.E.2d 1121 (Ill. App. Ct. 1995), but in that case the court concluded that the First Amendment did not prevent a claim against a church for a failure to supervise a priest who had allegedly sexually abused the plaintiff. *Id.* at 903, 212 Ill. Dec. at 290, 656 N.E.2d at 1124. The motion to dismiss there did not concern a breach of fiduciary duty claim. *Id.* Further, unlike the *Bivin* case an analysis of whether or not Kagan and McLoughlin had a fiduciary duty to Howell

would, under Howell's allegations, require an analysis of how they held themselves out as spiritual, moral and ethical advisors and counselors to him. This would clearly involve an analysis of spiritual matters that Illinois law does not allow. Defendants' motion to dismiss Count V is therefore granted.

### B. Negligent Infliction of Emotional Distress

Count VIII of Howell's complaint alleges that Kagan negligently inflicted emotional distress upon him. As discussed in Section II.B. *supra*, a claim for negligent infliction of emotional distress requires, in part, a plaintiff to show that the defendant owed plaintiff a duty. *See Parks*, 193 Ill. 2d at 181, 249 Ill. Dec. at 906-07, 737 N.E.2d at 296-97. As discussed *supra*, the Illinois Supreme Court has previously held that a diocese owes no duty to a possible childhood victim of priest sexual abuse when making an investigatory contact with the potential victim. *See Parks*, 193 Ill. 2d at 181-82, 249 Ill. Dec. at 907, 737 N.E.2d at 297. Although Howell argues that he alleges more than that Kagan made a mere "investigatory contact" with him, I find the decision in *Parks* directly on point to the present case. Howell has alleged that Kagan contacted him concerning his claim against the Diocese, and that Kagan should have known that contacting him and making statements about his claims and alleged sexual abuse might cause Howell harm. This is what the plaintiff alleged in *Parks*, although here Howell appears to allege that the comments Kagan made were

more hurtful than the benign comments alleged in *Parks*. I find no evidence under Illinois law, and Howell has cited none, that would support a finding that Kagan could have owed Howell a duty under the alleged circumstances. Therefore, I grant defendants' motion to dismiss Count VIII against Kagan.

## C. Fraud

Finally, Count X alleges that McLoughlin and Kagan committed fraud by contacting Howell and urging him to engage in a "sacramental reconciliation." Defendants first contend that I should dismiss this claim because Howell has not alleged fraud with specificity as required by Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that averments of fraud be stated with particularity. To satisfy this particularity requirement, defendants must state "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (quoting *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992)); *see also DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) (interpreting Rule 9(b) to require claimants to state "the who, what, when, where, and how: the first paragraph of any newspaper story").

Here, Howell only alleges that from March of 2004 through May of 2004, McLoughlin and Kagan contacted him and falsely stated that they desired to offer him assistance and urged him to engage in a "sacramental reconciliation." Howell alleges that these contacts were "knowingly false and in bad faith" and that McLoughlin and Kagan did not intend to actually assist Howell. I agree that these allegations do not plead fraud with particularly; they do not explain exactly when McLoughlin and Kagan contacted Howell, what they communicated to him, who specifically contacted him, and the method by which the alleged misrepresentation was made to him. *See e.g.*, *Eromon v. Grand Auto Sales, Inc.*, 351 F. Supp. 2d 825, 828 (N.D. Ill. 2004) ("The heightened standard requires more than an allegation that the fraud occurred sometime during a period of months or years.").[11] Therefore, I grant defendants' motion to dismiss Count X.

---

[11]Defendants also contend that this fraud claim is barred by the First Amendment because it would require this court to examine the meaning of "sacramental reconciliation" and the meaning of church doctrine. Without a more particular pleading from Howell I cannot address the validity of this argument. Further, Howell contends that he is unable to allege fraud with more particularity because of an agreed protective order between the parties that prevents him from making public certain alleged actions by the defendants. I do not see how a protective order would prevent Howell from detailing what allegedly fraudulent statements McLoughlin and Kagan made to him, since I do not see how such statements would be protected by any privilege, but Howell may raise such issues as he sees fit.

V.

For the above reasons, defendants' motion for a protective order is granted in part and denied in part.  I conclude that the portion of the voicemail recording at issue is protected by attorney-client privilege.  For this reason I dismiss Count VII of plaintiff's complaint.  However, the finding of privilege does not necessarily bar Howell's negligent infliction of emotional distress claim.  With Count VII otherwise dismissed, I grant Lynch and Hinshaw's motion to dismiss Count VIII and IX.  I grant the other defendants' motion to dismiss Counts V, VIII and X.




**ENTER ORDER:**

_____
            **Elaine E. Bucklo**
        United States District Judge

Dated: April 11, 2007